UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DANIEL NGUYEN,<br><br>　　　　Defendant. | Case No. 24-mj-71474-MAG-1 (LB)<br><br>**DETENTION ORDER** |

**INTRODUCTION**

The district of Massachusetts has charged the defendant Daniel Nguyen with transmitting threats in interstate commerce to two Boston-based companies that he would shoot and kill their employees, in violation of 18 U.S.C. § 875(c), which carries a five-year maximum sentence.[1] The government moved for detention on the grounds of danger to the community and a serious risk of flight. The government must establish the risk of non-appearance by a preponderance of the evidence, and it must establish danger to the community by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B); *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985). An issue is whether the offense, which carries a five-year maximum sentence, entitles the government to a

---

[1] Notice of Removal & Compl. – ECF No. 1 at 1–2, 5–11. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 24-mj-71474-MAG-1 (LB)

detention hearing and whether the government was in any event entitled to a hearing based on its proffer that Mr. Nguyen posed a serious risk of flight. Even if the crime is not a crime of violence, the government was entitled to a hearing. The court detains Mr. Nguyen because it cannot fashion conditions to address the safety of the community (although it could fashion conditions to address any standalone risk of flight). At the end of the order, the court flags the issue of Mr. Nguyen's competency.

**STATEMENT**

The complaint describes Mr. Nguyen's alleged conduct: he left five voicemails at two Boston-based companies in January and February 2024, threatening to kill their employees by shooting them with an AK-47 and a Glock. In two voicemails, he identified himself as an investor.[2] The FBI identified Mr. Nguyen as the caller from his mobile-phone records and ultimately seized his mobile phone when they executed a search warrant at his San Francisco residence on September 4, 2024.[3] They recovered no weapons. A search of the phone revealed emails associated with Mr. Nguyen. In June 2024, he sent a Nevada high-school employee two emails. One said that he hated all "n***ers" and would get his "9 millimeter and 45 and shoot" them all.[4] He sent a similar email to a security company in California saying that he hated "n***ers," "the only good n***er is a dead n***er that is shot and killed," and "[p]olice offers need to shoot and kill all n***ers for our safety. The only good n***er is a dead n***er."[5] The phone also had a copy of the five-page manifesto of Dylann Roof, the white supremacist murderer of nine Black people attending church services in Charleston, South Carolina.[6]

Mr. Nguyen has arrests but only one misdemeanor conviction in August 2018 (resulting in three years' probation) for threatening a crime with the intent to terrorize. That case, which is reflected in Pretrial Services' bail study and summarized in the government's detention memorandum, involved

---

[2] Compl. – ECF No. 1 at 5–8.

[3] *Id.* at 8–10.

[4] *Id.* at 10 (cleaned up). The court follows the citation formats in the parties' briefs.

[5] *Id.* at 11.

[6] U.S.'s Mem. – ECF No. 4 at 4.

Mr. Nguyen's sending threatening texts to his former girlfriend. Those texts included (1) a photograph of a black semi-automatic handgun with two loaded magazines; (2) a photograph of Mr. Nguyen pointing the gun at the camera; (3) a photograph of Lovelle Mixon and four fallen Oakland PD officers (Mixon killed four officers in 2009); and (4) a photograph of Maurice Clemmons with four fallen Washington state police officers (Clemmons also killed four officers in 2009). Below the photos, Mr. Nguyen said, "You make me feel like doing this now. If I do what Lovelle Mixon and Maurice Clemmons did its because of you."[7] In a subsequent search of Mr. Nguyen's residence, where he lives now, the police recovered the Glock 21 semiautomatic pistol seen in the photograph. It was loaded with a bullet in the chamber and an inserted ten-round magazine. Officers also recovered three loaded ten-round Glock magazines, a speed loader, 150 rounds of Blazer ammunition, 50 rounds of Federal ammunition, and 125 rounds of Sig Sauer ammunition.[8]

    The government summarizes Mr. Nguyen's other arrests and actions that often involve racist language and threats.[9] It proffered that he travels. A passport was not found during the September 2024 search.[10] He works as a security officer at KZB school.[11] He reports no substance abuse or mental-health issues.[12] Defense counsel proffered that he completed San Francisco's behavioral-health court. Two firearms are registered to him.[13] Defense counsel proffered that those firearms are not in his possession. He lives with his mother, who agreed to act as a custodian and to sign an unsecured bond. His aunt also agreed to co-sign an unsecured bond.[14]

---

[7] *Id.* (cleaned up).

[8] *Id.* at 4–5.

[9] *Id.* at 3–4 (twelve incidents including the threat to the ex-girlfriend and the emails to the Nevada school employee; one of the incidents was threatening a business in 2018 by saying he would go there with his AK, tell everyone how he felt about Filipinos, and then spray the place).

[10] Pretrial Servs. Rep. – ECF No. 6 at 6.

[11] *Id.* at 3.

[12] *Id.* at 4–5.

[13] *Id.* at 6.

[14] *Id.* at 2.

1  Pretrial Services recommended that the court detain Mr. Nguyen as a danger to the community
2  (but said that conditions could mitigate flight risk).[15]
3  The defense submitted assessments from state-court proceedings about Mr. Nguyen's
4  treatment in a behavioral-health court. Mr. Nguyen has an IQ of 73, has "strikingly limited ability
5  to understand the greater context and consequences of his actions," has "limited capacity to
6  function independently," and has the mental capacity of an eleven-year-old child.[16]

## GOVERNING LAW

Under the Bail Reform Act, 18 U.S.C. § 3142, a court must order the release of a defendant on a personal recognizance or unsecured appearance bond unless release on a bond alone will not reasonably assure the defendant's appearance or the safety of the community or another person. *See* 18 U.S.C. § 3142(b). If a court determines that release on a bond alone presents a risk of nonappearance or a danger to any person or the community, then the court must choose "the least restrictive further condition[s]" that will assure the defendant's appearance and the safety of the community or another person. *See id.* § 3142(c) (listing thirteen possible conditions of release and empowering the court to impose "any other condition that is reasonably necessary" to assure the defendant's appearance and the community's safety).

In evaluating whether conditions can be fashioned under section 3142(c) to reasonably assure the defendant's appearance and the safety of the community or another person, a court "shall consider" the factors in section 3142(g), including (1) the nature and circumstances of the offense, including whether the offense is one of certain enumerated crimes (including a controlled substance offense), (2) the weight of the evidence, (3) the history and characteristics of the person (including his job, financial resources, family ties, community ties, substance abuse history, physical and mental condition, character, criminal history, past conduct, track record in appearing court, and whether at the time of arrest the person was on supervision for parole, probation, or

---

[15] *Id.* at 6–7.

[16] These supporting documents were lodged, not filed, but were shared with the government.

other release in a pending criminal case), and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. *Id.* § 3142(g).

Under section 3142(f), the court holds a bail hearing only in certain cases, including those involving a crime of violence or a serious risk of flight. *Id.* § 3142(f)(1)(A), (2)(A).

At the hearing, the court determines whether any conditions in section 3142(c) will reasonably assure the defendant's appearance and the safety of the community or another person. *Id.* § 3142(f). The court must order a defendant detained if — "after a hearing pursuant to the provisions of subsection [3142](f)" — the court finds that conditions cannot be fashioned to assure the defendant's appearance in court or the safety of the community or another person. *Id.* § 3142(e)(1).

**ANALYSIS**

There are two issues: (1) is transmitting threats in interstate commerce, in violation of 18 U.S.C. § 875(c), a crime that entitles the government to a detention hearing, and (2) if there is a basis for a detention hearing, can the court set conditions to ensure the safety of the community and Mr. Nguyen's appearance in court. The government is entitled to a detention hearing, but on this record, the court cannot set conditions to ensure the safety of the community. It could set conditions to address a standalone risk of non-appearance. The court also flags the issues about Mr. Nguyen's competency.

**1. The Government's Entitlement to a Detention Hearing**

The parties contest whether 18 U.S.C. § 875 is a crime of violence that entitles the government to a detention hearing. 18 U.S.C. § 875(c) criminalizes threats in interstate commerce: "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." The defense contends that it is not a crime of violence because at least in the First Circuit, the statute permits conviction for a mens rea of recklessness and, in any event, a ten-year sentence is required before the government is entitled to

a detention hearing under § 3142(f)(1)(A).[17] The government contends that § 875(c) is a crime of violence that entitles it to a detention hearing.[18] Because the government was entitled to a detention hearing based on its proffer of a serious risk of flight, the court does not resolve the issue fully: a ten-year sentence is not required, but there is an issue about whether a conviction based on a mens rea of recklessness means that § 874(c) is not a crime of violence. Because the issue may come up in any appeal in the District of Massachusetts or in further detention proceedings in magistrate court, this order addresses the crime-of-violence issue but ultimately skirts the issue and holds that a hearing was appropriate based on a serious risk of flight.

Under the Bail Statute,

> **(f) DETENTION HEARING.**—The judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community—
>> **(1)** upon motion of the attorney for the Government, in a case that involves—
>>> **(A)** a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
>
> . . .
>>> **(E)** any offense that is not a felony that is not otherwise a crime of violence . . . that involves the possession or use of a firearm . . . ;
>> **(2)** upon motion of the attorney for the Government or upon the judicial officer's own motion in a case, that involves—
>>> **(A)** a serious risk that such person will flee . . . .

18 U.S.C. § 3142(f)(1)(A), (E), (2)(A).

The first issue is whether a detention hearing is required for crimes of violence only if the maximum term of imprisonment is at least ten years. It is not.

In *Dai v. United States*, the defendant was charged under § 875(c) with threatening Jewish students at Cornell University. 99 F.4th 136, 137 (2nd Cir. 2024). The magistrate judge held that the government was entitled to a detention hearing for all crimes of violence and that the ten-year qualifying language applied only to terrorism offenses under 18 U.S.C. § 2242b(g)(5)(B). The district

---

[17] Def.'s Opp'n – ECF No. 7 at 1–2.
[18] U.S.'s Mem. – ECF No. 4 at 5–6.

court upheld the order. *Id.* at 138. The Second Circuit affirmed, holding that the ordinary reading of § 3142(f)(1)(A) is that a "defendant may be eligible for a detention hearing if charged with one of three types of offenses: (1) a crime of violence, (2) a violation of § 1591 (sex trafficking of children or by force, fraud, or coercion), or (3) an offense listed in § 2332b(g)(5)(B) (federal crimes of terrorism) for which a maximum term of imprisonment of 10 years or more is prescribed." *Id.* at 138–39.

The Second Circuit gave three reasons for its holding. One, the result avoids surplusage because all violations of § 1591 are punishable by more than ten years, and removing it from the statute would leave the statute unchanged. *Id.* at 139 (collecting cases). Two, the result made grammatical sense because there was no restrictive comma separating the ten-year qualifier from the third category of offenses, "which suggests that the two are directly connected." *Id.* (collecting authority). Three, the result is supported by statutory history. Section 3142(f)(1)(A) originally included only the first category, meaning, any defendant charged with a crime of violence was eligible for a detention hearing. In 2004, Congress added the terrorism predicate for a hearing: "any offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed." That meant that the government could seek detention for (1) any crime of violence or (2) an offense listed in § 2232b(g)(4)(B) if the charge carried a term of imprisonment of ten years or more. Congress enacted the current version of the statute in 2008, adding "a violation of section 1591 between 'crime of violence' and 'an offense listed in § 2332b(g)(5)(B)'. . . . But it did not move '10 years or more' forward to apply to all three categories. Nor did it add a comma before the '10 years or more' language. This statutory history shows that Congress added one category of offenses in 2004 and another in 2008, but did not on either occasion alter the scope of the original category of offenses—crimes of violence." *Id.* at 139–40 (analyzing statutory history).

Under a plain reading of the statute, the ten-year restriction applies only to the third category for federal terrorism offenses. The result avoids surplusage, makes grammatical sense, and is consistent with the statutory history of the bail statute. *Id.* Other courts have reached a similar conclusion. *United States v. Santoro*, 359 F. Supp. 3d 122, 124 (D. Me. 2019) (in a case charging a violation of 18 U.S.C. § 875(c), the court held that the ten-year qualifier applied only to the third

category of terrorism-related charges); *United States v. Pietila*, No. 1:23-CR-78, 2023 WL 4313162, at *3 (W.D. Mich. July 3, 2023) (same).

The defense cites bail decisions reaching different conclusions.[19] These cases are distinguishable. *United States v. Baldazo* involved drug, gun, and money-laundering charges. No. 2:11 CR 77, 2012 WL 12947283, at *1 (N.D. Ind. Apr. 19, 2012). In its recitation of the overall scheme under the bail statute, the court listed the categories of cases where the court has authority to order detention, including "crimes of violence with a statutory maximum of ten years or more." *Id.* (citing, without analysis, 18 U.S.C § 3152(f)(1)(A)). This is only a characterization (and perhaps a misunderstanding) of the overall statutory scheme, involves no analysis, and is not persuasive authority. *Unites States v. Paulino* involves a Hobbs Act robbery, which carries a maximum term of imprisonment of more than ten years, and involves a similar characterization of the Bail Statute, not analysis. No. 19 Cr. 54 (PGG), 2020 WL 1847914, at *1, *5 (S.D.N.Y. Apr. 13, 2020) (in a post-plea detention proceeding, characterized the Hobbs Act robbery as "a crime of violence punishable by a maximum term of imprisonment of more than 10 years"); *see also United States v. Madoff*, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009) (in a securities-fraud cases, which entitles the government to a detention hearing only in a case where there is a serious risk that the defendant will flee or obstruct or attempt to obstruct justice, 18 U.S.C. § 3142(f)(2), the court similarly recited the qualifying offenses for a § 3142(f)(1) motion, including "a crime of violence, which carries a maximum term of imprisonment of ten years or more"). *But see United States v. Persico*, No. 10-CR-0147 (DLI), 2017 WL 3669554, at *3 (E.D.N.Y. Aug. 23, 2017) (concluding without analysis that the crime of extortionate extension of credit, in violation of 18 U.S.C. § 892, is not a predicate crime for a detention hearing under § 3142(f)(1)(A) because the maximum term of imprisonment is less than ten years).

The lack of analysis in these cases contrasts with the analysis in *Dai*, which is supported by the plain language of the statute and the statutory history. In sum, the court holds that a crime of violence entitles the government to move for detention, even if the statutory maximum is less than ten years.

---

[19] Def.'s Opp'n – ECF No. 7 at 8–9 (collecting cases, including cases discussing how a modifier at the end of a sentence applies to the entire series).

The second issue is whether a violation of § 875(c) is a crime of violence. Under the Bail Reform Act (relevantly here), "the term 'crime of violence' means— (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 3156(a)(4)(A). Citing a First Circuit model jury instruction, the defense contends that § 875(c) is not categorically a crime of violence because it can be accomplished with a mens rea of recklessness.[20] The government responds that it is a crime of violence, it also is a crime that involves the possession or use of a firearm, and the government was entitled to a detention hearing in any event based on its proffer of a serious risk of flight.[21] The court holds that the government was entitled to a hearing based on a serious risk of flight, does not decide the other issues, but sets forth its analysis so far for whatever utility it may have for any appeal or further detention proceedings.

Several cases have addressed whether transmitting interstate threats under 18 U.S.C. § 875(c) is a crime of violence. In *Santoro*, for example, the district court held that it was. 359 F. Supp. at 127 (applying *Elonis v. United States*, 575 U.S. 723, 740 (2015)). Other cases have reached similar results. *United States v. Christy*, No. 3:18-CR-223, 2020 WL 2794617, at *3 n.5 (M.D. Pa. May 29, 2020) (collecting cases); *United States v. Kane*, No. 3:20-mj-5054 TLF, 2020 WL 1660058, at *2 (W.D. Wash. Apr. 3, 2020) (same).

The defense cites the First Circuit Model jury instruction to support its argument that conviction is possible based on a mens rea of recklessness. That instruction has the following elements of the offense: (1) a communication was sent in interstate commerce; (2) the defendant intended to send the communication; and (3) the defendant consciously disregarded a substantial risk that his communication would be viewed as threatening. 1st Cir. Crim. Jury Instr. 4.18.875. It is the third element that allows conviction for a defendant who acts recklessly.[22] The comment to the instruction cites *Counterman v. Colorado*, which postdates *Elonis*. In *Counterman*, the Supreme

---

[20] *Id.* at 2 (citing 1st Cir. Crim. Jury Instr. § 4.18.875).

[21] U.S.'s Reply – ECF No. 13.

[22] Def.'s Opp'n – ECF No. 7 at 7.

Court held that a recklessness mens rea struck the appropriate balance between allowing free speech and "protecting against the profound harms, to both individuals and society, that attend true threats of violence. A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that the conduct will cause harm to another. In the threats context, that means that a speaker is aware that others could regard his statements as threatening violence and delivers them anyway." *Id.* comment (cleaned up) (quoting *Counterman*, 600 U.S. 66, 70, 79 (2023)).

The Ninth Circuit Model Jury instruction is different and has the following elements of the offense: (1) a defendant knowingly transmitted in interstate commerce a communication containing a threat to injure another person, and (2) the communication was transmitted for the purpose of issuing a threat, or with knowledge that the communication would be viewed as a threat. The government need not prove that the defendant intended to carry out the threat. 9th Cir. Crim. Jury Instr. 8.13 & comment (2024) (citing *Elonis*, 575 U.S. at 740) ("The mens rea of the crime involved in communicating a threat is established through proof that a defendant makes a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat.")). Thus, in the Ninth Circuit, a defendant cannot be convicted under § 875(c) on a recklessness standard.

The issue matters because in *Borden v. United States*, the Supreme Court addressed whether the defendant's state-court conviction for reckless aggravated assault was a crime of violence triggering a fifteen-year mandatory-minimum sentence under the Armed Career Criminal Act. In a plurality opinion, the court held that it did not.[23] 593 U.S. 420, 423–24 (2021) (because the increase in penalty is severe, the scope of the statute is confined); *Gomez v. United States*, 115 F.4th 987, 993–94 (9th Cir. 2024) (analyzing *Borden*, 593 U.S. at 426–27, 429, 446). The issue here is a threshold matter about whether the court can hold a detention hearing. As the defense

---

[23] *Id.* at 5–6 (contending that under *Borden*, a crime is not a crime of violence if it requires only the conscious disregard of a substantial and unjustifiable risk) (citing *Gomez v. United States*, 115 F.4th 987, 993–94 (9th Cir. 1994)); *see Gomez*, 115 F.4th at 993–94 (citing and quoting *Borden*: "After *Borden*, the elements clause is only satisfied by crimes that require use of force with a mens rea more culpable than simple recklessness. Put another way, if a person can be convicted under a criminal statute by using force against another only with the 'conscious disregard' of a 'substantial and unjustifiable risk,' the crime is not a crime of violence.") (cleaned up).

points out, the government's cited cases all predate *Borden*. The inquiry is different in the Ninth Circuit: under the law binding the court, the case seemingly is a crime of violence, at least without considering *Counterman*. But this case is being prosecuted in the District of Massachusetts. The court cannot resolve the issue on this briefing, at least not without more research. In light of its holding that the government is entitled to a detention hearing based on its proffer of a serious risk of flight, the court does not decide the issue now but preserves its analysis for whatever utility it has for further detention proceedings or any appeal.

The government also argues in its reply brief that it is entitled to a detention hearing under 18 U.S.C. § 3142(f)(1)(E), which requires a hearing if the defendant is charged with "any felony that is not otherwise a crime of violence that involves . . . the possession or use of a firearm or destructive device." It cites three cases: one involves a felon in possession of a firearm, the second involves making a false statement related to a federal firearms license, and the third involves a felon in possession of ammunition.[24] On this record and argument, the government's cases are distinguishable: its cited cases all involve possession or use of a firearm or destructive device; this case does not and involves only threats to use them.

The government also contends, and the court holds, that it was entitled to a detention hearing based on its proffer at the initial appearance (as reflected in the recording of that appearance) about serious risk of flight. The court's determination below — that conditions might address that risk — does not change the analysis of entitlement to the hearing. The defense points out that the government is able to meet its burden of establishing serious risk of flight only in "extreme and unusual cases." For this point, the defense cites the legislative history of the Bail Reform Act, which cites *United States v. Abrahams* for the proposition that courts have recognized the implicit authority of courts to "deny release to defendants . . . who pose significant risk of flight."[25] The quote "extreme and

---

[24] U.S.'s Reply – ECF No. 13 at 1–2 (citing *United States v. Watkins*, 940 F.3d 151, 165 (2d Cir. 2019); *United States v. Syed*, 624 F. Supp. 3d 1036, 1043 (D.N.M. 2022); *United States v. Elizondo*, No. 4:24-CR-00157-002, 2024 WL 1546488, at *1 (S.D. Tex. Apr. 4, 2024)).

[25] Def.'s Opp'n – ECF No. 7 at 3–4 (citing Bail Reform Act of 1983: Rep. of the Comm'n on the Judiciary, S. Rep. 98-225 at *3190 & n.28 (1983) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)).

unusual cases" comes from *Abrahams*. 575 F.2d 3, 4–5, 8 (1st Cir. 1978) (detaining a defendant who posted bail after his arrest at his home in Massachusetts, was released, failed to appear (thus forfeiting $100,000), and was arrested at a Florida hotel where he registered under an alias; he was an escaped New Jersey state prisoner and had given a false name at the previous bail hearing, he failed to appear in a California case and was a fugitive; he used several aliases, and he transferred $1.5 million to a bank in Bermuda in 1976 and 1977; the court held that this is "the rare case of extreme and unusual circumstances that justifies pretrial detention without bail").

*Abrahams* does not speak to the quantum required for the government to obtain a hearing based on a serious risk of flight and instead describes circumstances that justify detention. There is authority for the proposition that the burden to obtain a hearing is not onerous:

> There is little authority outlining what the government or Court must put forth to trigger the hearing. A district court in the Western District of Virginia has said it simply: "a detention hearing may be held if either the United States or the court *believes* there is a significant risk of flight." *United States v. Powers*, 318 F. Supp. 2d 339, 341 (W.D. Va. 2004) (emphasis added).
>
> Section 3142(f) requires that the detention hearing be held "immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance." Because of the immediacy with which the hearing should happen, the government or the Court need only express their belief that the defendant poses a serious risk of flight for the hearing to commence.

*United States v. White*, No. 4:18-mj-71386-MAG-1, 2018 WL 5291989, at *4 (N.D. Cal. Oct. 19, 2018).

Here, the government did more than express its belief, and it did not overplay the issues about possible flight risk: it acknowledged Mr. Nguyen's ties to the community, and it identified travel. It did this in the context of a fuller description of erratic and concerning behavior in this and other districts (described more fully in its subsequent memorandum and excerpted in the Statement) that gave rise to a substantial concern about volatility, amenability to supervision, and a resulting concern about a serious risk of flight. That gets the government its detention hearing under 18 U.S.C. § 3142(f)(2) based on a serious risk of flight. The court's view — also expressed in some of the Tenderloin fentanyl cases — is that the inquiry into whether a defendant poses a serious risk of flight cannot be divorced from the context of the defendant's behavior.

### 2. Danger to the Community and Serious Risk of Flight

Given the government's entitlement to a hearing, on this record, the court holds that no conditions will reasonably assure the safety of the community or the defendant's appearance in court. In reaching this conclusion, the court considered the complaint, the bail study, and the parties' proffers and submissions. The court explained its reasons more fully at the hearing, but in short, the defendant has had access to guns, even if he does not have guns at the moment, and has threatened to use them on many occasions. The issue is compounded by the court's concern about competency and how it affects Mr. Nguyen's ability to comply with conditions of release, including appearing in court. That concern is mitigated somewhat by his apparent graduation from behavioral-health court in San Francisco. The defense also proffered that he apparently has not had guns since his arrest in the 2018 incident involving his former girlfriend. But troubling behavior involving threats and the use of guns has continued. The court might be able to fashion conditions to address flight risk, but that issue cannot be separated from the volatility that has surrounded Mr. Nguyen's many law-enforcement contacts involving threats of violence coupled with actual possession of guns.

### 3. Competency

The court has significant concerns on this record — given the issues summarized at the end of the Statement — about Mr. Nguyen's competency. The parties have an obligation under the statute to ask the court to order Mr. Nguyen to submit to a psychiatric examination under 18 U.S.C. § 4241(b) to determine whether he is competent to stand trial. Based on Mr. Nguyen's submissions from behavioral-health court, there seemingly is reasonable cause to believe that the defendant "may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a). An examination under § 4241(b) can be conducted locally. *Id.* § 4247(b)–(c). The parties must discuss whether they can stipulate to that process. In any event, any psychiatric report must include the following information required by § 4247(c)(1–4):

(1) The defendant's history and present symptoms;

(2) A description of the psychiatric, psychological, and medical tests that were employed, and their results;

(3) The examiner's findings; and

(4) The examiner's opinions as to diagnosis, prognosis, and whether the defendant "is suffering from a mental disease or defect rendering him incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id.* § 4247(c)(1)–(4)(A).

In addition, the examiner should determine whether the defendant has sufficient mental capacity to waive his constitutional rights and to make a reasoned determination among the questions put to him.

## CONCLUSION

The defendant is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. 18 U.S.C. § 3142(i)(2). The defendant must be afforded a reasonable opportunity to consult privately with counsel. *See id.* § 3142(i)(3). On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility must deliver the defendant to the United States Marshal for a court appearance. *Id.* § 3142(i)(4). This decision is without prejudice to reconsideration in the form of a fuller assessment of the defendant's mental health and capacity and how — given the pending charge — conditions might address the safety of the community.

**IT IS SO ORDERED.**

Dated: October 25, 2024

LAUREL BEELER
United States Magistrate Judge